Aries CADOREE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00293–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 11, 2011.

Steven Hershkowitz, Houston, for Appellant.

Michelle R. Townsend, Houston, for the State.

Panel consists of Justices ANDERSON, SEYMORE and SULLIVAN.*

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Aries Cadoree, Jr., was convicted of possession with intent to deliver cocaine, the aggregate weight of which was at least four grams but less than 200 grams,[1] and sentenced to thirty years' imprisonment. In nine issues, he contends:

1. The trial court erred by (a) denying his motion to suppress, (b) including the incorrect burden of proof in a jury instruction, (c) allowing a witness to refuse to testify, (d) denying his motion for mistrial based on jury

---

* Justice Sullivan was assigned to the panel for this case and participated during oral argument. However, he subsequently resigned from the court and did not participate in deciding this case. *See* Tex.R.App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

1. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.112(a), (d) (West 2010).

misconduct, and (e) failing to conduct a hearing on his motion for new trial;

2. The evidence is factually insufficient to support jury findings that he voluntarily consented to a search of his bedroom and possessed cocaine;

3. He received ineffective assistance of counsel; and

4. The cumulative effect of the foregoing alleged errors deprived him of a fair trial.

We affirm.

## I. BACKGROUND

In June 2008, Officer Ashraf was dispatched to a residence in response to a domestic disturbance call. When Officer Ashraf arrived, he noticed a female who "appeared real scared ... [and] was crying." Although Officer Ashraf never testified regarding the female's name, other evidence identified her as Linda Swinney. She was at her neighbor's house when Officer Ashraf arrived. Swinney was too "scared" to speak with Officer Ashraf, so he "gave her a hug" and asked her to step outside. At this point, Swinney appeared "[r]eal shaky ... [and][v]ery nervous." Swinney told Officer Ashraf that "there is a guy in my house that I want out of my house. I'm very scared of him. He's scaring me and he's selling drugs out of my house. I want him out."

Officer Ashraf suggested that he and Swinney walk to her house, which was nearby. However, Swinney "was really scared and kept telling me, never mind, I don't want to do this, ... I'm scared." Officer Ashraf eventually convinced Swinney that he would help, and they proceeded to her house. When they arrived at her house, Swinney told Officer Ashraf that "there is a male in there. I want him out of my house. I'm scared of him. That's why I called the police." She also repeatedly stated appellant's name, "Cadoree."

According to Officer Ashraf, Swinney opened the door and invited him inside her house. However, Swinney testified that she did not give verbal consent for Officer Ashraf to search her house. Once inside, Officer Ashraf saw appellant and another man exit a bedroom and walk down a hall. To insure officer safety, Officer Ashraf instructed the men to exit the house. After they exited the house, Officer Ashraf noticed a "big wad" in appellant's front pocket. Officer Ashraf performed a pat-down search of appellant and discovered a large amount of cash in his pocket. Officer Ashraf asked appellant where he acquired the cash and whether he was employed. Appellant did not respond. Officer Ashraf then returned the cash to appellant and placed him in the back of the patrol car. The other man was patted-down and released. Officer Ashraf testified that appellant was not handcuffed or placed under arrest at that time but was placed in the patrol car "[b]ecause the disturbance call was regarding [appellant.]" However, Swinney testified that appellant was in handcuffs when he was brought out of the house.

According to Officer Ashraf, both appellant and Swinney informed him that appellant lived in the house. Officer Ashraf asked appellant, "[I]s there anything on [your] possession or anything in the house in [your] room I should know about[?]" According to Officer Ashraf, appellant responded, "[N]o, you can check it." Before entering the house, Officer Ashraf asked, "[Y]ou sure there is nothing on you or in your room that I need to know about[?]," and appellant again stated, "[N]o, you can go ahead and search it." It is undisputed that appellant did not sign a written-consent form. Officer Ashraf testified that, before he conducted his search, appellant

"became real irate and scream[ed] at [Swinney,] '[W]hat are you doing, what are you doing.'"

Officer Ashraf entered the house and proceeded to the bedroom from which he had earlier witnessed appellant exit. Once in the room, he smelled "a strong odor of marijuana" and found a marijuana cigarette. He also found razor blades and plastic bags in plain view, as well as a broken electronic scale. He opened a jewelry box and found four bags containing a substance he believed to be narcotics. Laboratory tests established that the bags contained over forty-two ounces of cocaine. Officer Ashraf found male clothes in the room which, in his opinion, would fit appellant. He also testified that Swinney asked him to search her room because "she had a scale that belonged to [appellant.]" This scale was found and seized. Officer Ashraf also testified that Swinney told him a glass pipe was in her room.

## II. Motion to Suppress Regarding Consent to Search

In his first issue, appellant contends the trial court erred by denying his motion to suppress the fruits of Officer Ashraf's search. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's finding of historical facts and reviewing *de novo* the trial court's application of the law. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997).[2] The deference is particularly high if the trial court's findings are based upon an evaluation of credibility and de-

meanor. *Id.* When the trial court has not made findings of fact, we imply findings that support the court's ruling if the findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim. App.2000).

Appellant first contends that alleged inconsistencies in Officer Ashraf's testimony tainted his credibility, rendering his testimony regarding Swinney's and appellant's consent unbelievable. We conclude these "inconsistencies" do not affect the great deference we must afford the trial court's factual findings. *See Guzman*, 955 S.W.2d at 89.

Appellant argues that Officer Ashraf was not credible because he (1) initially testified he contacted his supervisor *before* he entered the house but later testified he called his supervisor *after* entering the house, (2) repeatedly referred to the broken scale recovered in appellant's bedroom despite the fact that he found a functioning scale in Swinney's bedroom, (2) never testified that "Linda Swinney" was the woman he assisted, (3) did not "remember" until re-direct-examination that he also recovered a glass pipe in Swinney's bedroom, and (4) initially testified appellant possessed $2,500 in cash but later clarified the narcotics found were worth $2,500 and appellant possessed $1,245. However, these aspects of Officer Ashraf's testimony were not relevant to whether he received voluntary consent to search the house, and it was the trial court's bailiwick to determine whether these aspects affected Officer Ashraf's credibility. Accordingly, we defer

---

2. Appellant urges us to apply the exclusion-of-evidence standard of review we discussed (but did not employ) in *Caddell v. State*, 123 S.W.3d 722, 726–27 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *see also Hanks v. State*, 137 S.W.3d 668, 672 (Tex.Crim.App. 2004) (adopting our position in *Caddell* that admissibility of evidence is not subject to suf-

ficiency review). However, *Caddell* concerned the standard for reviewing an implied jury finding, whereas we are reviewing the trial court's ruling on a motion to suppress. Hence, *Caddell* is inapplicable, and we will employ the well-established standard for reviewing motions to suppress.

to the trial court's implied finding that Officer Ashraf was credible. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex.Crim. App.2000) (expressing trial court free to disbelieve testimony from defendant's family that they did not consent to search).

■ Next, appellant argues that Officer Ashraf's search was merely a protective sweep during which he could recover only contraband in plain view. We disagree. Nothing in Officer Ashraf's testimony supports an inference that Swinney or appellant limited the scope of their consent to search. Thus, the consent extended to concealed areas, such as the jewelry box in which the cocaine was discovered. *See, e.g., State v. Garrett*, 177 S.W.3d 652, 657–58 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding defendant's failure to limit the scope of his consent to search vehicle allowed officer to search concealed areas); *James v. State*, 72 S.W.3d 35, 42–43 (Tex. App.-Texarkana 2001, pet. ref'd) (holding reasonable person would have understood defendant's general consent to search extended to concealed areas because defendant knew police were looking for narcotics).

Additionally, appellant contends that Swinney revoked her consent when she told Officer Ashraf, "[N]ever mind, I don't want to do this, ... I'm scared." *See Valtierra v. State*, 310 S.W.3d 442, 450 (Tex.Crim.App.2010) ("[P]erson who consents to the entry may specifically limit or revoke his consent."). However, even assuming that this statement was a revocation of her initial consent (and assuming appellant had a right to complain regarding Swinney's consent or lack thereof), Swinney subsequently consented because she (1) told Officer Ashraf she wanted the "male" out of her house, (2) opened her door and invited Officer Ashraf inside, and (3) accompanied him inside during the

search and led him to her room where he recovered a scale and pipe.

■ Finally, appellant argues the trial court erred by implicitly finding he voluntarily consented to the search. Whether consent was voluntary involves a question of fact that is determined from the totality of the circumstances. *Gutierrez v. State*, 221 S.W.3d 680, 686–87 (Tex. Crim.App.2007). In the context of a motion to suppress, the State must prove voluntary consent by clear and convincing evidence. *See Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App.2000); *Lalande v. State*, 676 S.W.2d 115, 117 n. 4 (Tex.Crim.App.1984). In order to be voluntary, consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche*, 10 S.W.3d at 331 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Consent must be shown to be positive and unequivocal. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App.1991). We consider the following factors in determining voluntariness: the defendant's age, education, and intelligence; the length of detention; any constitutional advice given to the defendant; the repetitiveness of questioning; and the use of physical punishment. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000). We also consider whether appellant was in custody, handcuffed, or had been arrested at gunpoint, whether *Miranda* warnings were given, and whether the defendant had the option to refuse to consent. *See Flores v. State*, 172 S.W.3d 742, 749–50 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In examining the totality of the circumstances surrounding consent to search, the trial court should consider the circumstances before the search, reaction of the accused to pressure, and any other

factor deemed relevant. *Reasor*, 12 S.W.3d at 818.

According to Officer Ashraf, appellant had been detained when he was inside the house, then patted-down and questioned about his possession of a large amount of cash. Appellant did not receive *Miranda* warnings before he was placed in the backseat of the patrol car. Consequently, appellant was at least detained when he provided consent. Nevertheless, nothing indicates that Officer Ashraf was hostile or threatening toward appellant or that Officer Ashraf had drawn his firearm. Additionally, Officer Ashraf *never asked appellant for consent to search the house.* Instead, Officer Ashraf merely inquired whether there was anything in appellant's room that Officer Ashraf "should know about," to which appellant responded by giving Officer Ashraf permission to search his room. Accordingly, we conclude there is clear and convincing evidence supporting the trial court's determination that appellant consented voluntarily. *See Johnson v. State*, 68 S.W.3d 644, 654 (Tex. Crim.App.2002) (determining defendant consented voluntarily despite being in custody and not provided *Miranda* warnings). We hold the trial court did not err by denying appellant's motion to suppress. Appellant's first issue is overruled.

### III. JURY INSTRUCTION ON VOLUNTARY CONSENT

■ In his second issue, appellant contends the trial court erroneously instructed the jury on the State's burden of proof to establish that the State did not illegally obtain evidence. Specifically, in the article 38.23(a) instruction included in the charge, the jury was asked to decide whether appellant gave voluntary consent by "clear and convincing evidence" instead of "beyond a reasonable doubt." *See* Tex.Code. Crim. Proc. Ann. art. 38.23(a) (West 2005).

The State concedes that "beyond a reasonable doubt" is the burden of proof required under article 38.23(a). *See id.; see also Peterson v. State*, 727 S.W.2d 125, 126 (Tex.App.-San Antonio 1987, no pet.) (citing *Lalande*, 676 S.W.2d at 117 n. 4). It is also undisputed that appellant did not object to the instruction. Nevertheless, we conclude no error occurred because appellant was not entitled to the article 38.23(a) instruction.

■ There are three requirements that must be met before a trial court is required to the include an article 38.23(a) instruction in the jury charge: (1) the evidence heard by the jury must raise an issue of fact regarding whether evidence was illegally obtained; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App.2007). Thus, to raise a disputed fact warranting an article 38.23(a) instruction, there must be some affirmative evidence that contravenes the existence of that fact. *Id.* at 513. A cross-examiner's questions do not create a conflict in the evidence, although the witness's answers to those questions might. *Id.* Furthermore, the jury's right to disbelieve a witness's testimony in whole or part does not create a factual dispute. *See Shpikula v. State*, 68 S.W.3d 212, 217 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

During the charge conference, the State agreed that an article 38.23(a) instruction was required because a disputed fact issue existed regarding whether Swinney consented to the search; i.e., Officer Ashraf testified Swinney provided consent, but Swinney testified she did not. However, despite this dispute, appellant lacked standing to complain about Swinney's lack of consent because nothing in the record

supports a finding that he had a reasonable expectation of privacy in any part of the house except his bedroom. *See Neal v. State*, 256 S.W.3d 264, 284 (Tex.Crim. App.2008) (concluding defendant who lacked standing was not entitled to article 38.23(a) instruction). Thus, appellant was entitled to an article 38.23(a) instruction only if there was a factual dispute relative to whether he provided voluntary consent to search his bedroom.

Officer Ashraf's testimony that he led appellant out of the house, patted-him-down, discovered the large wad of cash, then placed him in the patrol car, was not contradicted. However, there was a dispute concerning whether appellant was handcuffed when he was placed in the patrol car. According to Officer Ashraf, the following exchange occurred after appellant was placed in the patrol car;

> [Prosecutor:] So what do you do after you place the defendant in the back of the car?
>
> [Officer Ashraf:] I talked to the defendant. I asked him is there anything on his possession or anything in the house in his room I should know about?
>
> [Prosecutor:] What did he say?
>
> [Officer Ashraf:] He tells me no, you can check it.
>
> [Prosecutor:] So he gave you permission to check his room?
>
> [Officer Ashraf:] That's correct.
>
> . . . .
>
> [Prosecutor:] So you get permission to look in his room. And do you, in fact, go look in his room?
>
> [Officer Ashraf:] Yes, I asked him twice. Before I actually go in the house I say, hey, you sure there is nothing on you or in your room that I need to know about. He said no, you can go ahead and search it.

> [Prosecutor:] Did you go and search his room?
>
> [Officer Ashraf:] I asked him once again if he was sure there was nothing in there and I did search his room.

Even accepting as true the evidence that appellant was wearing handcuffs while in the patrol car, nothing supports a finding that appellant consented as a result of actual or implied coercion or duress. Instead, after Officer Ashraf asked if there was "anything . . . in his room," appellant invited Officer Ashraf to search his room. The rationale for appellant's invitation is not discernible from the record (he may have believed that by inviting the officer to search his room, the officer would be satisfied there were no narcotics and cease his investigation before actually searching the room). However, nothing shows that he was in any manner threatened or compelled to provide consent. Therefore, there was no fact issue regarding whether appellant's consent was voluntary. *See Carmouche*, 10 S.W.3d at 331 (explaining that consent is involuntary if it is "coerced, by explicit or implicit means, by implied threat or covert force" (quoting *Schneckloth*, 412 U.S. at 228, 93 S.Ct. 2041)).

Determining there was no fact issue relative to the voluntariness of appellant's consent does not end our analysis; we must also determine whether there was a dispute relative to whether appellant actually gave consent. For example, if some affirmative evidence contradicted Officer Ashraf's testimony that appellant consented, appellant would be entitled to an article 38.23(a) instruction. As noted above, appellant argues there were inconsistencies in Officer Ashraf's testimony that affected his credibility; however, these "inconsistencies" did not pertain to whether appellant verbally consented to the search. On cross-examination, Officer Ashraf agreed that using a written consent form

would have been the "best way" to attain consent but that he never used such forms. However, this testimony is not affirmative evidence that appellant did not verbally consent.

Additionally, there was evidence of instances in which Officer Ashraf conducted searches without consent. Specifically, Swinney testified that she did not consent to Officer Ashraf's search. Furthermore, appellant's cousin testified that a car he drove to Swinney's house several days after appellant was arrested was searched by Officer Ashraf without consent. Although this evidence contradicted Officer Ashraf's averment that Swinney consented to the search and supported a finding that he conducted searches without consent at least twice, it was not affirmative evidence that *appellant* did not consent to the search. "[C]ollateral impeachment does not create an issue of fact as to the lawfulness of [an officer's search]." *Cerda v. State*, 10 S.W.3d 748, 757 (Tex.App.-Corpus Christi 2000, no pet.) (determining officer's impeachment regarding his reasons for stopping conspirator's vehicle did not create fact question regarding whether officer legally stopped defendant's vehicle); *see also Madden v. State*, 242 S.W.3d 504, 513–14 (Tex.Crim.App.2007) (explaining that, to be entitled to an article 38.23(a) instruction concerning whether officer lawfully stopped defendant because he was speeding, "[t]here must be some affirmative evidence of 'did not speed' in the record"). *But see Pruneda v. State*, 104 S.W.3d 302, 305 (Tex.App.-Texarkana 2003, pet. ref d) (expressing evidence that officer or police department had history of engaging in racial profiling would raise fact issue regarding whether officer engaged in racial profiling when he detained defendant). Moreover, Swinney testified that she did not know whether appellant provided consent. Because there was no affirmative evidence contradicting Officer

Ashraf's testimony that appellant verbally consented, the issue should not have been submitted to the jury. Consequently, inclusion of the improper burden of proof in the article 38.23(a) instruction was not erroneous. *See Hardin v. State*, 951 S.W.2d 208, 210–11 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (concluding alleged inadequacy in an article 38.23 instruction could not be erroneous because defendant was not entitled to the instruction). We overrule appellant's second issue.

## IV. Jury's Implied Finding Regarding Voluntary Consent

In his third issue, appellant contends the evidence is insufficient to support the jury's finding that he voluntarily consented to the search. We have already determined that appellant was not entitled to the instruction regarding whether consent to search was voluntary. Nevertheless, whether appellant voluntarily consented to the search of his room is not a question of *sufficiency* but *admissibility*. As such, appellant may not challenge the sufficiency of the evidence supporting this implied finding. *See Hanks v. State*, 137 S.W.3d 668, 672 (Tex.Crim.App.2004); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). We overrule appellant's third issue.

## V. Jury's Finding Regarding Possession

In his fourth issue, appellant contends the evidence is factually insufficient to support the jury's finding that he possessed the cocaine. While this appeal was pending, five judges on the Texas Court of Criminal Appeals held that only one standard should be employed to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim.App.2010) (plurality op.); *id.* at 926

(Cochran, J., concurring). Accordingly, we review appellant's challenge to the factual sufficiency of the evidence under the legal-sufficiency standard. *See Pomier v. State,* 326 S.W.3d 373, 378–79 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.) (applying single standard of review required by *Brooks* ).

When reviewing legal sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks,* 323 S.W.3d at 899 (plurality op.). Following admonitions from the Court of Criminal Appeals in *Brooks,* this court may not sit as a thirteenth juror and substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.* at 905, 911–12; *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim. App.1986) (stating the jury may choose to believe or disbelieve any portion of the testimony at trial). Our duty is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

█ In a possession-with-intent-to-deliver case, the State must prove the defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew that the substance in his possession was a controlled substance. *Parker v. State,* 192 S.W.3d 801, 805 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd); *see also* Tex. Health & Safety Code Ann. § 481.002(38) (West 2010). Possession may be proved through either direct or circumstantial evidence. *Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005).

For the following reasons, we conclude that the evidence is legally sufficient to support the possession element of the charged offense beyond a reasonable doubt.

● Officer Ashraf testified that Swinney said appellant was "selling drugs out of my house."

● Officer Ashraf witnessed appellant exit a bedroom where Officer Ashraf later found four bags of cocaine. Other drug-related paraphernalia were discovered in the bedroom, including a marijuana cigarette, razor blades, plastic bags, and a broken scale. A functioning scale was recovered in Swinney's bedroom; she stated that this scale belonged to appellant.

● Swinney testified that people who are allowed to stay at her house use the back bedroom. Officer Ashraf testified that he searched the "last" bedroom in the house.

● Before Officer Ashraf entered the house, appellant became irate and screamed at Swinney. When asked if appellant's demeanor was normal for someone in his situation, Officer Ashraf testified, "Not normally. I make a lot of arrests. And if there is nothing in the room[,] they have nothing to be scared of. So that's not normal."

Viewed collectively, these facts support a finding that appellant was staying in the bedroom where the cocaine was located and was concerned that Officer Ashraf would discover the cocaine. Therefore, the jury could have rationally inferred that appellant exercised actual care, custody, control, or management over the cocaine and knew the substance was a controlled substance. Accordingly, we overrule appellant's fourth issue.

## VI. Witness's Refusal to Testify Regarding Certain Issues

In his fifth issue, appellant contends the trial court erred by allowing Swinney to refuse to testify regarding certain issues.

The trial court appointed counsel for Swinney prior to her testimony. She stated on the record that her counsel advised her regarding her constitutional rights. Before she testified, Swinney requested to speak with appellant's counsel. After they spoke, appellant's counsel informed the court, "I just told her to follow the advice of her counsel." Appellant then questioned Swinney in front of the jury.

During cross-examination, the following exchanges occurred between the State and Swinney:

[Prosecutor:] And whether or not [appellant] was living there, he was staying with you at that time; is that not right?

[Swinney:] Under advice of counsel I choose to take the Fifth, please.

[Prosecutor:] I'm sorry?

[Swinney:] I'm going to take the Fifth.

[Prosecutor:] You're not going to answer that question?

[Swinney:] No.

. . .

[Prosecutor:] Were you upset the defendant was selling drugs out of your home?

[Swinney:] I choose to take the Fifth.

. . .

[Prosecutor:] So you did not at any time go in the house with the officer.

[Swinney:] I choose to take the Fifth.

. . .

[Prosecutor:] Okay. Do you remember at any point handing anything to the officer, ma'am?

[Swinney:] I choose to take the Fifth.

[Prosecutor:] Are you aware of whether or not [appellant] gave consent for the officer to look in his room?

[Swinney:] No, I'm not aware.

[Prosecutor:] Okay. Would it surprise you to hear that he gave consent to the officer to search in the room?

[Swinney:] I choose to take the Fifth.

[Prosecutor:] Ma'am, before you came out here today you were called to take the stand; is that correct?

[Swinney:] Yes, I was.

[Prosecutor:] And you, in fact, decided that you needed to speak to the defense counsel . . . before you came out here; is that correct?

[Swinney:] Yes, it is.

[Prosecutor:] Okay. Is it a fair statement to say you're a little bit nervous right now?

[Swinney:] No.

[Prosecutor:] Are you scared?

[Swinney:] No.

[Prosecutor:] And you stated that you're friends with [appellant]; is that correct?

[Swinney:] Yes.

[Prosecutor:] So you wouldn't want anything bad to happen to him; is that correct?

[Swinney:] I choose to take the Fifth.

[Prosecutor:] You did, in fact, before you were asked to come out here on the stand ask[ ] to speak to [defense counsel]; is that correct?

[Swinney:] Yes.

During re-direct, defense counsel asked the following questions:

[Defense Counsel:] Did you ever see [appellant] sell drugs?

[Swinney:] I choose to take the Fifth.

When a witness invokes her Fifth Amendment right against self-incrimination on the advice of the witness's counsel,

the trial court is not obligated to make any further determination. *See Ross v. State,* 486 S.W.2d 327, 328 (Tex.Crim.App.1972); *Boler v. State,* 177 S.W.3d 366, 371 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). Further, if the trial court was not requested to compel the witness to testify, a defendant may not claim for the first time on appeal that the witness waived her Fifth Amendment privilege. *Brown v. State,* 500 S.W.2d 653, 655 (Tex.Crim.App.1973).

■■■ When she initially asserted privilege, Swinney expressed, "Under advice of counsel I choose to take the Fifth, please." Thus, the trial court was under no obligation to inquire into the basis of her privilege assertion. *See Ross,* 486 S.W.2d at 328; *Boler,* 177 S.W.3d at 371. Additionally, appellant has not preserved any argument that Swinney waived her Fifth Amendment privilege because he never requested that she be compelled to testify. *See Brown,* 500 S.W.2d at 655. Accordingly, we overrule appellant's fifth issue.

### VII. JUROR MISCONDUCT

■■■ In his sixth issue, appellant contends the trial court erred by refusing to grant a mistrial because of juror misconduct.

■■■■ A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *See Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004). A mistrial is necessary when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim.App.1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* We

review a trial court's denial of a mistrial for abuse of discretion. *Id.* We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App.2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

During deliberations, the trial court was informed that one of the jurors, an attorney, referred to information not presented at trial, causing another juror to complain about the alleged misconduct to another person outside the courthouse. Coincidentally, the attorney-juror was involved in an automobile accident and was replaced by the alternate juror. The trial court explained to the jury why it had become necessary to use an alternate juror and thoroughly admonished that the court's charge was the only law the jury could consider. The trial judge further instructed the jury that they must not allow outside information to influence their deliberations. The trial court then interviewed the jurors individually and questioned them regarding the outside information provided by the attorney-juror. One of the jurors revealed that the attorney-juror had advised that oral consent to search was ineffective. This advisement was contrary to the court's charge and, thus, impermissible. *See Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009) ("A juror must make decisions at the guilt and punishment phases using information obtained in the courtroom: the law, the evidence, and the trial court's mandates."). However, all twelve jurors expressed that the attorney-juror's statements did not affect or influence them or that they were able to disregard outside statements.[3]

---

**3.** Only one of the jurors said she had a "strong opinion" regarding the attorney-juror's misconduct and felt the misconduct in-

fluenced the other jurors. Nevertheless, she stated that the misconduct did not influence her. Additionally, another jury opined that

Appellant argues that the trial court should have identified the jury who spoke with the person outside the courthouse and also should have conducted a more thorough investigation into the misconduct. We disagree. Because the jurors expressed they would not be influenced by outside information, the trial court reasonably determined that the jury was able to be fair and impartial. Accordingly, the trial court did not err by denying appellant's motion for mistrial. We overrule appellant's sixth issue.

## VIII. Lack of Hearing on Motion for New Trial

 In his eighth issue, appellant contends the trial court erred by failing to conduct a hearing on his motion for new trial. However, appellant was not entitled to a hearing because he failed to present his motion to the trial court. *See* Tex. R.App. P. 21.6; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex.Crim.App.2009) ("The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'"); *Rozell v. State*, 176 S.W.3d 228, 231 (Tex.Crim.App. 2005) (concluding that defendant does not preserve any error in the trial court's failure to conduct a hearing if no request for a hearing was presented). Accordingly, we overrule appellant's eighth issue.

## IX. Assistance of Counsel

In his seventh issue, appellant contends he received ineffective assistance of counsel.

### A. Standard of Review

In reviewing claims of ineffective assistance, we apply a two-pronged test. *See*

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim.App.2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The defendant must prove by a preponderance of the evidence that (1) counsel's representation was deficient because it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Smith v. State*, 286 S.W.3d 333, 340 (Tex.Crim.App.2009) (quoting *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. 2052). We consider the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). We begin with the strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Stults v. State*, 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption, the "allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

The record is best developed in a hearing on a motion for new trial or an application for a writ of habeas corpus. *Stults*, 23 S.W.3d at 208. Where there is no record relative to counsel's decisions and actions, an allegation of ineffective assistance can often lie beyond effective appellate review. *See id.* However, when no reasonable tri-

---

she did not believe the misconduct influenced the other jurors.

al strategy could justify counsel's conduct, counsel's performance may fall below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects counsel's strategy. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App.2005). Our review of defense counsel's conduct, however, must be highly deferential, and we should avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim. App.1984).

**B. Analysis**

We first consider appellant's contention that counsel was ineffective by failing to object to the erroneous "clear and convincing evidence" burden of proof in the article 38.23(a) instruction submitted to the jury. We cannot conclude counsel was deficient by failing to object to the article 38.23(a) instruction because we have already determined appellant was not entitled to the instruction. *See Hardin*, 951 S.W.2d at 211 ("We conclude that [counsel was not ineffective for failing to object to the adequacy of the article 38.23 instruction] because, as noted above, appellant was not entitled to an article 38.23 instruction at all.").

■ Next, appellant argues counsel was ineffective by failing to object to Officer Ashraf's testimony regarding statements Swinney made to him on the day of appellant's arrest. Appellant contends these statements should have been excluded because they were inadmissible hearsay and violated his Sixth Amendment right to confrontation. According to appellant, counsel should have at least requested that Swinney's statements be considered only for purposes of whether Officer Ashraf had consent to search the house. The State responds that Swinney's statements fell within the "excited utterance" hearsay ex-

ception and did not implicate appellant's confrontation rights.

■ An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). To qualify as an excited utterance, (1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous, (2) this state of excitement must be so dominant in the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *Kesaria v. State*, 148 S.W.3d 634, 642 (Tex.App.-Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex.Crim.App.2006). The "pivotal inquiry is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event.'" *Id.* (quoting *King v. State*, 953 S.W.2d 266, 269 (Tex.Crim.App.1997)).

■ Under the Sixth Amendment right of confrontation, the State must show that an out-of-court, testimonial statement offered against an accused was made by a declarant who (1) is presently unavailable and (2) was subject to cross-examination by the accused. *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex.Crim.App.2010) (citing *Crawford v. Washington*, 541 U.S. 36, 59, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). However, out-of-court statements made to police are not considered testimonial if they are made "'to enable police assistance to meet an ongoing emergency'" rather than "'to establish or prove past events potentially relevant to later criminal prosecution.'" *Vinson v. State*, 252 S.W.3d 336, 338 (Tex.Crim.App.2008) (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).

Officer Ashraf testified that he was already "in the area" when he was dispatched to Swinney's location. This evidence supports an inference that Officer Ashraf quickly responded to the emergency. As noted above, when Officer Ashraf first met with Swinney, she was crying, "[r]eal shaky," "[v]ery nervous," and too "scared" to speak with him. After he hugged her and brought her outside, she finally confided, "[T]here is a guy in my house that I want out of my house. I'm very scared of him. He's scaring me and he's selling drugs out of my house. I want him out." As Officer Ashraf and Swinney approached her house, she was "really scared" and agreed to allow Officer Ashraf to help her only after coaxing. She also kept repeating appellant's name.

We conclude that the foregoing statements qualify as "excited utterances" under Rule 803(2). *See, e.g., Hudson v. State,* 179 S.W.3d 731, 737 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (concluding "excited utterance" exception applied because complainant was "visibly shaken and highly upset when [officers] arrived within five minutes of receiving assault call"); *Bufkin v. State,* 179 S.W.3d 166, 172 (Tex.App.-Houston [14th Dist.] 2005) (concluding "excited utterance" exception applied because complainant was "extremely agitated when officers arrived at the scene ... [and] so upset that officers initially could not understand her"), *aff'd,* 207 S.W.3d 779 (Tex.Crim.App.2006). Further, Swinney's statements were non-testimonial and did not violate appellant's confrontation rights because they were made primarily to assist Officer Ashraf during an ongoing emergency. *See Vinson,* 252 S.W.3d at 338–39; *Wilson v. State,* 296 S.W.3d 140, 147–48 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd). Therefore, counsel cannot have performed deficiently by failing to object to, or request a limiting instruction regarding, Swinney's admissible statements. *See Ex parte White,* 160 S.W.3d 46, 53 (Tex.Crim. App.2004) ("To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection.").[4]

 Finally, appellant contends counsel was ineffective because he failed to first question Swinney outside the jury's presence in order to determine the substance of her potential testimony. Appellant argues that, without taking this precaution, Swinney was permitted to refuse to answer several important questions in front of the jury. Appellant contends Swinney's refusals to testify prevented the jury from hearing that the contraband actually belonged to her. Further, appellant argues that, during closing argument, the prosecutor blamed appellant for Swinney's piecemeal testimony as follows: ·

> I want to go ahead and talk about [Swinney], the complainant in this case. You heard that, in fact, when she was going to be brought out she had a break. She needed a break to speak to ... the defense attorney ... before she got up there on the stand. You heard her not answer my questions. When it came down to the important questions did you

4. Appellant argues that the record conclusively establishes counsel's failure to object was not based on any sound trial strategy. After the State rested, counsel argued to the trial court that appellant's right to confrontation was jeopardized because the State failed to call Swinney as a witness. The State, apparently cognizant of counsel's plight, responded that it was under no obligation to call Swinney and appellant waived confrontation issues by failing to object when Officer Ashraf testified regarding Swinney's hearsay. However, we need not determine whether this was a sound strategy because we have determined that Swinney's statements were admissible.

know [if] the defendant ever sold any drugs from your home? Did you know if the defendant gave any voluntary consent? Did the defendant ever live or stay with you? She refused to answer any of those questions. And why do you think that is? Because, as she stated, she's his friend. And she doesn't want to get him in trouble.

Indeed, Swinney and defense counsel spoke privately prior to her testimony. Afterwards, defense counsel stated on the record, "I just told her to follow the advice of her counsel." However, nothing in the record reveals the subject of the conversation between Swinney and defense counsel. During this private meeting, defense counsel could have discovered reasons not to question Swinney. Accordingly, the record does not "affirmatively demonstrate" that counsel acted deficiently by failing to interview Swinney. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999).[5] We overrule appellant's seventh issue.

## X. CUMULATIVE ERROR

Finally, in his ninth issue, appellant contends that all the errors combined deprived him of a fair trial. However, we have considered each issue independently and determined that no error was committed; consequently, there is no "cumulative error" for us to consider. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim.App.1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). Ac-

cordingly, we overrule appellant's ninth and final issue.

We affirm the trial court's judgment.

SULLIVAN, J., not participating.

---

5. The record reflects that, immediately after the State rested, the trial court offered defense counsel an opportunity to question Swinney outside the presence of the jury for purposes of his motion to suppress, but counsel declined. Appellant argues that counsel's refusal to question Swinney outside the jury's presence *when invited to do so by the trial*

*court* establishes deficiency in his performance. However, it was later in the trial when counsel spoke privately with Swinney. Consequently, any mistake counsel made by declining the court's earlier offer could have been rectified by whatever Swinney later told or asked counsel.