

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00302-CR

RODNEY NATHANIEL BOONE                              APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two issues that concern only evidentiary sufficiency, appellant Rodney Nathaniel Boone appeals his second-degree felony conviction for possessing while intending to deliver one gram or more but less than four grams of heroin.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(2), .112(a), (c) (West 2010).

**Background Facts**

In July 2012, Fort Worth Police Department (FWPD) Officer Juan Sandoval obtained a search warrant for a house. Officer Sandoval organized a team of approximately twenty officers to execute the warrant. On an early evening, after knocking on the house's front door and receiving no response, the officers opened the door by force and entered the house. Seconds later, while Officer Sandoval stood in the backyard of the house, he saw six people, including appellant, running out of the back door.[3] While fleeing, appellant dropped a clear plastic baggie in the back room of the house.

Officer Sandoval found the baggie that appellant had dropped. In the baggie and near it, Officer Sandoval saw several clear capsules containing a brown powdery substance that he believed was heroin.

In the house, officers found another person who had possessed drugs, more narcotics (heroin, cocaine, and Xanax) in the kitchen and bedroom areas of the house,[4] a coffee grinder containing residue, a digital scale containing brown residue, and two cell phones. Appellant said that one of the cell phones belonged to him. The police did not find evidence on the phones that connected anyone to the delivery or sale of drugs.

---

[3]There were ten people in the house altogether, and the police eventually arrested seven of them. Two of the seven had pending arrest warrants.

[4]As explained below, the evidence connects heroin that the police found in a bedroom to appellant.

When the police detained appellant, he had roughly $666. Specifically, appellant had two $100 bills, one $50 bill, seven $20 bills, twelve $10 bills, twenty-six $5 bills, twenty $1 bills, and over $5 in change. Officer Sandoval believed that the amount of money that appellant had possessed was "consistent with individuals who sell narcotics." Also, Officer Sandoval believed that appellant had possessed an amount of heroin that exceeded what he could personally use.

The police arrested appellant. A grand jury indicted him with possessing and intending to deliver one gram or more but less than four grams of heroin. He retained counsel and filed several pretrial documents, including a request for a jury trial and an election of the trial court to set his punishment if he was convicted. At trial, he pled not guilty.

The jury convicted appellant of possessing the heroin while intending to deliver it.[5] The trial court sentenced him to thirty years' confinement after finding that an enhancement paragraph contained in the indictment was true.[6] Appellant brought this appeal.

---

[5]A forensic scientist's tests revealed that some of the capsules that the police found in the house contained heroin. While Officer Sandoval testified that he found approximately twenty capsules near the back of the house, the evidence indicates that the forensic scientist received fourteen capsules that came from that location and two that came from a bedroom.

[6]This paragraph alleged that appellant had been previously convicted of two felony drug offenses. Appellant pled true to the paragraph. The trial court's finding that the paragraph was true set his minimum punishment at twenty-five years' confinement. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2013).

3

## Evidentiary Sufficiency

In his two issues, appellant contends that the evidence is insufficient to prove that he possessed and intended to deliver the heroin that the police found upon executing the search warrant. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). We determine whether necessary inferences supporting the verdict are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

To obtain appellant's conviction for possessing heroin while intending to deliver it, the State was required to prove beyond a reasonable doubt that he exercised care, custody, control, or management over the heroin; intended to

4

deliver[7] it to another; and knew that it was a controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .112(a); *Cadoree v. State*, 331 S.W.3d 514, 524 (Tex. App.—Houston [14th Dist.] 2011, pet ref'd); *see also Franklin v. State*, Nos. 02-12-00342-CR, 02-12-00343-CR, 2013 WL 2631167, at *2 (Tex. App.—Fort Worth June 13, 2013, no pet.) (mem. op., not designated for publication). These elements may be proved by direct or circumstantial evidence. *See Cadoree*, 331 S.W.3d at 524; *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.).

When a person is not in exclusive possession of the place where a controlled substance is found, it cannot be concluded that the person had knowledge of and control over the substance unless there are additional independent facts that link the person to the substance. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Wilson v. State*, No. 02-10-00439-CR, 2012 WL 662339, at *3 (Tex. App.—Fort Worth Mar. 1, 2012, no pet.) (mem. op., not designated for publication). Possible links that may support a factfinder's decision that a defendant possessed drugs include the defendant's presence when the drugs were found, the drugs' appearance in plain view, the defendant's proximity to and the accessibility of the drugs, the influence of drugs upon the defendant when arrested, the defendant's possession of other contraband or drugs when arrested, the defendant's incriminating statements, the defendant's

---

[7]To deliver means to actually or constructively transfer a controlled substance. Tex. Health & Safety Code Ann. § 481.002(8) (West Supp. 2013).

5

attempt to flee, the defendant's furtive gestures, an odor of drugs, the presence of other contraband or other drug paraphernalia, the defendant's ownership or right to possess the place where the drugs were found, the defendant's possession of a large amount of cash, and conduct of the defendant indicating a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Wilson*, 2012 WL 662339, at *4; *see also Robles v. State*, Nos. 02-12-00048-CR, 02-12-00049-CR, 2013 WL 5175569, at *6 (Tex. App.—Fort Worth Sept. 12, 2013, no pet.) (mem. op., not designated for publication) (stating that the "links rule" described above protects "innocent bystanders from conviction merely because of their proximity to someone else's drugs"); *Black v. State*, 358 S.W.3d 823, 833 (Tex. App.—Fort Worth 2012, pet. ref'd) ("The evidence, direct or circumstantial, must establish, to the requisite level of confidence, that [the defendant's] connection with the [drugs] was more than just fortuitous.").

We conclude that the evidence sufficiently connects appellant to the heroin that the officers found at the back of the house and in the bedroom. As to the capsules found at the back of the house, Officer Sandoval testified, without equivocation, that he saw appellant drop the baggie containing the capsules while attempting to flee from the house. Officer Sandoval explained that when he saw this occur, he was standing behind a car and was approximately ten to twelve feet from the back door. According to Officer Sandoval, although he was behind the car to protect himself, he "maintained a visual" of the back door so that he could see anyone coming out of it. On questioning by appellant's

6

counsel, Officer Sandoval reiterated that he had maintained a "direct . . . line of sight to the door" while standing behind the car.

Officer Sandoval's testimony provided direct evidence of appellant's dominion and control over the heroin in the back of the house. *See Sneed v. State*, 875 S.W.2d 792, 795 (Tex. App.—Fort Worth 1994, no pet.) ("Here, Officer Carter testified that he saw Sneed take the cocaine capsule out of his pocket and throw it on the floor. . . . We hold that there was sufficient evidence to prove that Sneed knowingly possessed a controlled substance."); *Ortega v. State*, 861 S.W.2d 91, 93, 95 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that an officer's testimony that he saw a defendant drop something on a car's floorboard was sufficient to sustain a conviction for possession of cocaine that was found on the floorboard). Moreover, appellant's presence when the heroin at the back of the house was found, his proximity to the drugs (before he dropped them), his connection to the other heroin in a bedroom (as described below), his attempt to flee, the presence of other drug paraphernalia in the house that he paid rent on (as explained below), and his possession of a large amount of cash further enabled the jury to rationally find beyond a reasonable doubt that appellant possessed the heroin from the back of the house. *See Evans*, 202 S.W.3d at 162 n.12; *Robles*, 2013 WL 5175569, at *6.

The evidence is likewise sufficient to link appellant to the heroin found in a bedroom. During the execution of the search warrant, FWPD Officer Christopher Jones entered a bedroom that contained a dresser and men's clothes. In that

7

bedroom, Officer Jones found a social security card, mail items, a pistol, and capsules containing heroin. Officer Jones found the mail items on top of the dresser; the heroin capsules were in the dresser's top drawer along with the social security card and other papers. The mail that Officer Jones found was addressed to appellant (at a different address than the house subject to the search), and the social security card stated appellant's name. The papers that Officer Jones found contained appellant's rent receipts for the house where the search occurred. Officer Jones opined that the presence of appellant's items together in the bedroom near the heroin produced a reasonable belief that the heroin in the bedroom belonged to appellant.

We agree. The jury could have rationally concluded beyond a reasonable doubt that appellant had possessed the heroin from the bedroom based on the proximity of the heroin to his personal items and male clothing, his presence at the scene, the accessibility of the drugs in the drawer, his possession of the other heroin capsules, his attempt to flee, and his possession of approximately $666. *See Evans*, 202 S.W.3d at 162 n.12; *Robles*, 2013 WL 5175569, at *6; *see also Johnson v. State*, No. A14-92-01279-CR, 1994 WL 652784, at *2 (Tex. App.—Houston [14th Dist.] Nov. 17, 1994, no pet.) (not designated for publication) ("Based upon the evidence of the clothing, receipts, photographs, medicine and mail, the jury had reason to conclude that appellant had care, custody, and control over the room where the drugs were found."); *Goodall v. State*, 774 S.W.2d 821, 821–22 (Tex. App.—Fort Worth 1989, pet. ref'd) (holding that

8

evidence was sufficient to prove the defendant's possession of cocaine when the police found the drug in a satchel that also contained the defendant's checkbook and his utility bill).

Appellant argues that the evidence is insufficient to prove his possession of any of the heroin that the police found because (1) Officer Sandoval was "mistaken . . . or simply was being disingenuous" while testifying that he saw appellant drop a baggie containing heroin, (2) the police did not attempt to obtain fingerprints from the baggie containing the heroin found near the back of the house, and (3) the State did not introduce photographs to support the testimony that officers found heroin close to appellant's belongings in the bedroom.

The weight and credibility of Officer Sandoval's testimony was in the exclusive province of the jury, which received an exhibit depicting the car that he stood behind while looking toward the back of the house.[8] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768; *see also Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (explaining that when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder). Also, the jury was free to accept the testimony of the State's witnesses without the introduction of photographs supporting the testimony. *See*

---

[8]Appellant contends that this photo "shows that the location of the [car] was far enough away from the back door that it would be hard for anyone to see a person throwing a small amount of drugs."

9

*Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.). Finally, although fingerprints could have provided an additional link between appellant and the heroin,[9] they were not necessary to support his conviction considering the other evidence presented by the State. *See Callahan v. State*, 502 S.W.2d 3, 6 (Tex. Crim. App. 1973) ("Appellant calls attention to the fact that there were no fingerprints discovered and that he was not found inside the store. . . . [O]n appeal these facts are not enough for this court to overturn the jury's verdict."); *Walker v. State*, No. 05-93-00236-CR, 1994 WL 316331, at *3 (Tex. App.—Dallas June 30, 1994, no pet.) (not designated for publication).

For all of these reasons, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant possessed the heroin that the police found in the house. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768. We hold that the evidence is sufficient to prove possession, and we overrule appellant's first issue.

Next, appellant contends that the evidence is insufficient to prove his intent to deliver the heroin. We may consider several factors in reviewing the sufficiency of the evidence to prove an appellant's intent to deliver, including the nature of the location where the appellant was arrested, the quantity of drugs the

---

[9]Officer Jones and FWPD Officer Anthony Taylor testified that the FWPD does not typically attempt to find fingerprints on narcotics packaging; Officer Taylor stated that he had seen such fingerprinting done only "a handful of times in two years."

10

appellant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia (for use or sale), whether the appellant possessed a large amount of cash in addition to the drugs, and the appellant's status as a drug user. *Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007); *see also Gard v. State*, No. 02-11-00087-CR, 2012 WL 3736091, at *5 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.) (mem. op., not designated for publication) (explaining that intent to deliver is a question of fact for the jury to resolve and that it may be inferred from the acts, words, or conduct of the accused). The number of these factors is not as important as the logical force they have in establishing intent. *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g).

Here, appellant was arrested after possessing heroin in a house that also contained a coffee grinder with residue and digital scales with residue. Officer Sandoval testified that from his training and experience, he believed that the residue on the coffee grinder was heroin. He recognized that digital scales and coffee grinders may have legitimate, legal uses. He testified, however, that people involved with illegal drugs have been known to use coffee grinders to "grind up . . . tar heroin with cutting agents to make . . . powder heroin." He expressed that from his training and experience, people who cut up narcotics with a coffee grinder usually do so for resale, not for personal use. Also, he

11

stated that digital scales are used by drug dealers to measure specific amounts of drugs for resale.

Although the digital scales and coffee grinder did not bear internal characteristics that particularly linked them to appellant, they were contained in the house where appellant had paid rent for several months, and they had residue from what appeared to be the same drug that appellant had possessed. Also, appellant possessed a large amount of cash—approximately $666—upon his arrest. FWPD Officer Nathan Danford testified that the possession of a large amount of cash indicates that someone may be in the business of selling narcotics.[10]

Next, the evidence indicates that appellant possessed an amount of heroin that is greater than what a mere user of the drug would normally carry, even if the amount was not enormous. The capsules that Officer Sandoval found near the back of the house collectively weighed 2.47 grams, and the total gross weight of the capsules found within the house was 2.74 grams. The aggregate net weight of the heroin that the forensic scientist tested[11] was 1.15 grams. Officer

---

[10]Appellant contends that $666 is not an "amount that screams drug dealer." But courts have concluded that lesser amounts created inferences of defendants' intent to deliver drugs. *See Gard*, 2012 WL 3736091, at *6 ($590); *King v. State*, 129 S.W.3d 680, 684 (Tex. App.—Waco 2004, pet. ref'd) ($508); *Elder v. State*, 100 S.W.3d 32, 34 (Tex. App.—Eastland 2002, pet. ref'd) ($596).

[11]The net weight is the weight of the substance without the capsules. The forensic scientist tested only ten of the sixteen capsules that the police seized from the house.

Taylor testified that one gram of powder heroin has a market value of $60 to $150. He said that the capsules of heroin that the police collected from the house would sell for $10 to $20. According to Officer Taylor, a user of heroin would usually possess one to two pills, although there could be circumstances where users could carry more. The evidence establishes that appellant possessed sixteen capsules.

Finally, Officer Taylor testified that in some circumstances, drug dealers trade drugs for guns. In the same bedroom where the police found heroin in close proximity to appellant's personal items, they also found a loaded gun. *Cf. Leadon v. State*, No. 02-08-00163-CR, 2009 WL 1815663, at *3–4 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op., not designated for publication) (considering a gun found in the defendant's home with drugs as evidence of the defendant's intent to deliver).

According to appellant, the evidence is insufficient to prove his intent to deliver the heroin because (1) the gun, digital scale, grinder, and money that the police found "all . . . could have benevolent purposes"; (2) the heroin that officers seized amounted to only a few grams and was not packaged in a way that would indicate drug dealing; (3) the cell phones that the police found did not contain evidence about drug exchanges; and (4) the State did not present evidence of fingerprints from the digital scales, the gun, or the coffee grinder. It is true that the heroin was not packaged in such a way that was determinative of appellant's intent to deliver it and that the cell phones did not provide evidence necessarily

13

supporting the verdict. Although a hypothetical factfinder could have weighed this evidence against a finding of intent to deliver, the other evidence described above creates reasonable inferences supporting the jury's verdict. We must presume that jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

Next, although the items found in the home and on appellant's person could have legal uses, based on the facts recited above (including the residue on the coffee grinder and digital scales), it was not irrational for the jury to conclude that they were connected to the delivery of heroin. *Cf. Hicks v. State*, 255 S.W.3d 351, 355 (Tex. App.—Texarkana 2008, no pet.) (concluding that the presence of a digital scale with drug residue and a loaded firearm supported a jury's finding that a defendant intended to deliver cocaine); *Browning v. State*, No. 05-99-00736-CR, 2000 WL 714569, at *1–2 (Tex. App.—Dallas June 5, 2000, no pet.) (not designated for publication) (affirming a conviction for possession of cocaine with intent to deliver when, among other facts, the police found scales, coffee grinders, and guns in the defendant's residence). Finally, as stated above, fingerprint evidence could have supported the verdict but was not necessary to do so. *See Callahan*, 502 S.W.2d at 6.

Considering the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found appellant's intent to deliver the heroin beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at

14

2789; *Winfrey*, 393 S.W.3d at 768; *Jordan*, 139 S.W.3d at 726. We therefore hold that the evidence is sufficient to prove appellant's intent to deliver, and we overrule his second issue.

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 13, 2014