Affirmed and Memorandum Opinion filed August 9, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00405-CR

___________________

 

Tobechukwu Ifechukwu, Appellant

 

V.

 

THE State of Texas, Appellee



 



On
Appeal from the 248th District Court

Harris County,
Texas



Trial Court Cause No. 1221513



 

 

MEMORANDUM OPINION

A jury convicted Tobechukwu Ifechukwu
of aggravated robbery and sentenced him to eighteen years’ imprisonment.  On
appeal, Ifechukwu argues the trial court erred by (1) denying his motion to
suppress involuntary statements made to police officers; (2) allowing testimony
before the jury relating to an impermissibly suggestive photo-spread lineup
that gave rise to a likelihood of misidentification; and (3) admitting evidence
before the jury that was not relevant to his punishment.  In his final issue, Ifechukwu
argues he received ineffective assistance of counsel.  We affirm.

I

On June 5, 2009, Shawna Maurice and David Blanks were
working at a Cash Advance America when Tobechukwu Ifechukwu entered the store under
the guise of getting a loan.  Shortly thereafter a second man, later identified
as “Darnell,” walked in and went directly to the far side of the store, keeping
an eye out the window but never looking at anyone else.  Ifechukwu then pulled
out a gun, pointed it at Blanks’s head, and ordered both employees to get on
the ground.  Meanwhile, Darnell, who also had a gun, locked the front door.  Ifechukwu
instructed Maurice to crawl to the safe and open it.  She complied, fearing for
her life, and gave him the “dummy bag,”[1]
while Darnell searched the registers for money.  The robbers then ordered
Maurice and Blanks to crawl to the back of the store.  Darnell bound their arms
and legs with duct tape while Ifechukwu demanded their cell phones and asked
where he could find more money.  Ifechukwu told them to stay on the floor or he
would shoot them, and the robbers returned to the front of the store.  Maurice
and Blanks waited until they heard a customer enter the store and, realizing
the robbers were gone, freed themselves from the tape and called police.

About two weeks later, Detective Roberto Rincon of
the Harris County Sheriff’s Department separately showed Maurice and Blanks the
same photo array.  Both witnesses claimed they saw Ifechukwu’s face clearly
during the robbery, and both confidently identified Ifechukwu from the photo
array as the first robber.  During the trial, the State played a video from a
surveillance camera that recorded the robbery, which corroborated Blanks’s and
Maurice’s accounts of the events.

On the evening of June 12, 2009, Lieutenant John Ross
of the Houston Police Department led three other officers in arresting Ifechukwu
for the robbery.  After Lieutenant Ross drove Ifechukwu to the Fondren police station
and read him his Miranda rights, Ifechukwu voluntarily submitted a
written confession, admitting to the June 5 armed robbery as well as a number
of others.  The following morning, Officer Darren Schlosser of the Houston
Police Department conducted a recorded interview in which Ifechukwu voluntarily
confessed again to the June 5 robbery as well as twelve extraneous offenses.  The
trial court below, however, tried Ifechukwu only for the June 5 aggravated
robbery.  After finding him guilty, a jury sentenced him to eighteen years’
imprisonment.  

II

In his first issue, Ifechukwu argues the trial court erred
in denying his motion to suppress what he contends were involuntary written and
recorded confessions.  Specifically, Ifechukwu alleges Sergeant Garza,[2] who worked
undercover to facilitate Ifechukwu’s arrest, threatened to shoot him with a stun
gun if he did not cooperate and thus coerced Ifechukwu into making false
confessions.  

A

We review a trial court’s decision to deny a motion
to suppress a defendant’s confession using an abuse-of-discretion standard.  Swain
v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).  During the
suppression hearing, the trial court is the exclusive trier of fact and judge
of the witnesses’ credibility.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); Mason v. State, 116 S.W.3d 248, 256 (Tex. App.—Houston
[14th Dist.] 2003, pet. ref’d).  An appellate court affords almost total
deference to the trial court’s determination of historical facts supported by
the record, especially when the trial court’s findings are based on an
evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d
644, 652–53 (Tex. Crim. App. 2002) (citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)).  If the trial court’s ruling is reasonably
supported by the record and is correct on any theory of law applicable to the
case, we must sustain it.  Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Flores v. State, 172 S.W.3d 742, 748 (Tex.
App.—Houston [14th Dist.] 2005, no pet.).

The constitutional right to due process prohibits the
government from using an involuntary confession against an accused.  State
v. Terrazas, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999).  When a defendant
presents evidence raising a voluntariness question, the prosecution has the
burden of proving voluntariness by a preponderance of the evidence.  Id.
at 725.  A statement is involuntary only if there was coercive police conduct
of such a nature that any statement obtained thereby was unlikely to have been
the product of an essentially free and unconstrained choice by its maker.  Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  Whether a confession
was involuntary as a matter of fact must be decided by the totality of the
circumstances on an individual basis.  Gomes v. State, 9 S.W.3d 373, 377
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  Relevant circumstances include
the length of detention and interrogation, whether the defendant was permitted
to access to his family or an attorney, and the presence or absence of physical
brutality.  Id.  Further, the police conduct must be causally related to
the confession in question.  Colorado v. Connelly, 479 U.S. 157, 164
(1986).  The ultimate question is whether the suspect’s will was overborne.  Creager
v. State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  

After the hearing on Ifechukwu’s motion to suppress,
the trial court reached the following conclusions: (1) Ifechukwu’s statements
were voluntary; (2) the officers made no threats or promises to him; and (3) even
if Sergeant Garza did threaten Ifechukwu with a stun gun, such conduct did not
render the subsequent confessions to other officers involuntary.  We afford
almost total deference to that determination if it is supported by the record.
 See id.; see also Guzman, 955 S.W.2d at 89.

B

The record reflects that on the evening of June 12,
2009, Sergeant Garza went undercover to Ifechukwu’s apartment complex with a
valid arrest warrant.  When Sergeant Garza saw Ifechukwu outside the apartment
building, he notified Lieutenant Ross, who was waiting about two blocks away,
via radio.  Ifechukwu testified Sergeant Garza revealed himself as a police
officer, showed Ifechukwu a stun gun, and threatened to shoot Ifechukwu with it
unless he cooperated.  Lieutenant Ross arrived within thirty seconds of
receiving Sergeant Garza’s radio message, arrested Ifechukwu, and drove him to
the Fondren police station.  Ifechukwu and Sergeant Garza rode in separate
vehicles and did not see each other again.  Lieutenant Ross testified Ifechukwu
was very cooperative and never indicated he had been threatened by or was afraid
of any of the officers.  Lieutenant Ross further testified Sergeant Garza did
not carry a stun gun during the arrest and Ifechukwu was never threatened in
Lieutenant Ross’s presence or to his knowledge. 

Lieutenant Ross testified that about three hours
after the arrest, he read Ifechukwu his Miranda rights and Ifechukwu,
after indicating he understood his rights, willingly gave a signed, written
statement confessing to a number of armed robberies, including the June 5 crime
for which Lieutenant Ross arrested him.  Ifechukwu testified, however, that although
Lieutenant Ross made no threats, he dictated statements and instructed Ifechukwu
to copy them, and Ifechukwu complied out of fear.  But Lieutenant Ross
testified Ifechukwu wrote the substance of the statement on his own, with
Lieutenant Ross providing only basic instructions, such as where Ifechukwu
should sign the document. 

On June 13, roughly twelve hours after the arrest,
Officer Schlosser interviewed Ifechukwu to follow up with the investigation. 
The roughly two-hour-long interview was recorded on DVD.  Officer Schlosser
told Ifechukwu it was in his best interest to talk during the interview and advised
Ifechukwu of his constitutional rights, including his right to remain silent, to
have an attorney present during the interview and throughout the process, to
terminate the interview at any time, and explained that anything Ifechukwu said
could be used against him.  Ifechukwu nodded his head and gave verbal
acknowledgment that he understood his rights but wanted to waive them.  At no
point did Ifechukwu ask to terminate the interview or request counsel.   

At the suppression hearing, however, Ifechukwu
testified, “I was afraid because I already been threatened with a stun gun.  If
I don’t cooperate they going to use a stun gun on me, so had to say everything
they told me to say then—although I was told, you know, to feel relaxed and all
that.”  Ifechukwu testified Officer Schlosser met with him for 30–45 minutes
before the interview and gave Ifechukwu a list and details about a number of
robberies, instructing Ifechukwu to confess to those robberies during the interview. 
But Officer Schlosser denied speaking to Ifechukwu about the case prior to the
interview and further asserted he did not know about some of the other
robberies until Ifechukwu confessed to them.  

The trial court could have reasonably discredited
Ifechukwu’s testimony in favor of Lieutenant Ross’s to conclude no one
threatened Ifechukwu.  The trial court further concluded that, even if Sergeant
Garza did make the alleged threat, Ifechukwu voluntarily gave statements to
Lieutenant Ross and Officer Schlosser.  The record supports this conclusion
because, as the trial court noted, there was a lack of causality between the
alleged threat and the subsequent confessions.[3] 
See Colorado, 479 U.S. at 164; see also Smith v. State, 547
S.W.2d 6, 11 (Tex. Crim. App. 1977) (explaining a confession is not involuntary
if there was a break in the stream of events from the initial coercion to the
giving of the confession).  Additionally, there was no evidence of physical
brutality.  See Gomes, 9 S.W.3d at 337.  Accordingly, the record
supports the conclusion that Ifechukwu’s will was not overborne, and the trial
court did not abuse its discretion in denying his motion to suppress the
statements.  Creager, 952 S.W.2d at 855.  We overrule Ifechukwu’s first
issue.

III

In Ifechukwu’s second issue, he argues the trial
court erred by refusing to exclude testimony that identified Ifechukwu as one
of the robbers from what he contends is an impermissibly suggestive
photographic lineup.  Specifically, Ifechukwu argues that although all six
photos are the same size, his head is obviously larger than those of the other
five subjects. 

A

            Whether the
pre-trial suspect-identification procedure in this case was impermissibly
suggestive is a mixed question of law and fact that does not turn on an
evaluation of witnesses’ credibility and demeanor, and we review such questions
de novo.  See Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim. App.
1998); Brown v. State, 29 S.W.3d 251, 254 (Tex. App.—Houston [14th
Dist.] 2000, no pet.).[4] 


In-court identification is inadmissible if it is
tainted by an impermissibly suggestive pretrial photographic identification.  Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).  To determine whether
a pretrial identification procedure was so suggestive and conducive to mistaken
identification that subsequent use of that identification at trial would deny
the accused due process of law, we use a two-step analysis which inquires (1)
whether the pretrial procedure was impermissibly suggestive, and (2) if so,
whether the suggestive pretrial procedure gave rise to a very substantial
likelihood of irreparable misidentification at trial.  Simmons v. United
States, 390 U.S. 377, 384 (1968); see also Barley v. State,
906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995).  Ultimately, it is the appellant’s
burden to show by clear and convincing evidence that the in-court
identification is unreliable, and identification testimony is admissible if the
indicia of reliability outweigh the influence of an impermissibly suggestive
pretrial identification.  Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim.
App. 1993); see also Santos v. State, 116 S.W.3d 447, 453 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d).  

B

We first consider whether the pretrial procedure in
this case was impermissibly suggestive.  A pretrial identification procedure
may be suggestive by the manner in which it is conducted, such as if police
point out the suspect or suggest that the suspect is included in the photo
array.  Barley, 906 S.W.2d at 33.  Suggestiveness may also arise if the
suspect is the only individual closely resembling the pre-procedure
description.  Id.  Neither due process nor common sense requires all the
individuals in a pretrial identification to be identical.  See id. at
33–34 (concluding a photographic array consisting of six black males of similar
features was not unduly suggestive, even though the photos had variable
lighting and backgrounds); Buxton v. State, 699 S.W.2d 212, 216 (Tex.
Crim. App. 1985) (concluding a pretrial lineup of black males with varying skin
tones was not unduly suggestive despite subjects differing by a range of five
inches in height and thirty-five pounds in weight).  But the subjects’
appearances should be sufficiently similar as to provide a reasonable test for
the witnesses’ ability to reliably identify the perpetrator.  Escovedo v.
State, 902 S.W.2d 109, 117 (Tex. App.—Houston [1st Dist.] 1995, pet.
ref’d).

In this case, Detective Rincon developed the photo array
by choosing photos of five black males with physical characteristics similar to
Ifechukwu’s, including consideration of hairstyle, skin texture, size, build,
and skin tone and color.  Detective Rincon testified the goal for using similar
subjects is to prevent witnesses from focusing on any single characteristic of
a subject without adequately considering the other photos.  He further
testified he showed Blanks and Maurice the same photo lineup on June 17 and 18,
respectively, and gave each of them a “photo show up instructions form,” which
explained the guilty party may not be in any of the photos, they were not
required to choose a photo, and it was important for them not to choose an
innocent subject.  The witnesses both signed copies of this form to indicate
their understanding of the instructions.  Blanks identified Ifechukwu
immediately and Maurice identified him after about a minute.  Because both witnesses
clearly saw Ifechukwu’s face during the crime, they both testified to being
very confident about their identifications.  Blanks and Maurice similarly testified
Detective Rincon never indicated which photo showed the suspect or suggested
they choose a particular photo, and they did not speak to each other about the
photos.  At trial, both witnesses identified Ifechukwu as the robber with
certainty, even though Ifechukwu had a beard and more hair at trial than during
the crime.  

After reviewing the record and the photographic array
therein, we conclude the lineup was not impermissibly suggestive.  Ifechukwu
argues the lineup was impermissibly suggestive because it incorporated a photo in
which his head appeared obviously larger than those of the other five subjects
in the lineup.  But all six subjects are black males with bald heads and
similar facial features and structures.  The photos are the same size and have
similar plain backgrounds, and the photos are similarly cropped such that each
subject’s head fills most of the picture with a small portion of his upper
torso also visible.  To the extent Ifechukwu’s head looks larger than the other
subjects’ heads, it appears to be a reflection of his physical characteristics
and not of photo manipulation. 

Furthermore, both Maurice and Blanks testified the
men in the pictures were of similar shape, size, and build, and they were given
plenty of time to identify the suspect.  Maurice specifically testified that
there was “not really” anything different about the six subjects in the
photos.  It is undisputed that Detective Rincon did not suggest which photo the
witnesses should choose.  On cross-examination, Ifechukwu’s counsel asked
Maurice and Blanks whether one of the subjects had a particularly big head, and
both testified that Ifechukwu’s head was very large.  However, both witnesses
testified they identified Ifechukwu at trial based on their memories from the
robbery and not from the photo.  Ifechukwu has not shown by clear and
convincing evidence that the photo lineup was impermissibly suggestive, and accordingly
we do not reach the second prong of the analysis.  Delk, 855 S.W.2d at
706.  We overrule Ifechukwu’s second issue.

IV

In Ifechukwu’s third issue, he contends the trial
court erred by admitting irrelevant extraneous-offense testimony during his
punishment hearing.[5] 
The thrust of Ifechukwu’s complaint, however, seems to be that the evidence was
insufficient to support a connection between Ifechukwu and the extraneous
offense.  Ifechukwu further alleges the State failed to provide proper notice
of its intent to use that offense against him pursuant to Texas Rules of Civil
Procedure 37.07.  Regardless of how Ifechukwu frames this complaint, the State contends,
and we agree, he waived the argument by failing to object to the testimony at
trial.

For a party to preserve error for appellate review,
he must demonstrate the error on the record.  Tex. R. App. P. 33.1(a); see
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  The party
must make the complaint, objection, or motion in a timely manner and state the
grounds for the desired ruling with sufficient specificity to make the trial
court aware of his complaint.  See Nickerson v. State, 312 S.W.3d 250,
258 (Tex. App.—Houston [14th Dist.] 2010, pet. ref’d).  If a party’s objection
at trial does not correspond with its issue on appeal, the party has waived the
issue.  Id.; see also Broxton, 909 S.W.2d at 918.  Ifechukwu’s counsel
failed to lodge any objection at trial to the evidence he complains on appeal
was erroneously admitted.  Furthermore, Ifechukwu concedes he did not preserve error
for appeal by contending his trial counsel was ineffective for “failing to
object to [the] testimony.”  Although Ifechukwu’s trial counsel’s failure to
object may be considered in an ineffective-assistance-of-counsel analysis, it
cannot render error preserved for purposes of considering whether the trial
court properly admitted testimony of the extraneous offense.  Because Ifechukwu
failed to preserve error, we overrule his third issue.

V

            In
his final two issues, Ifechukwu contends he received ineffective assistance of counsel. 
He alleges counsel was ineffective by (1) failing to object to extraneous evidence
connecting Ifechukwu with individuals who regularly carried handguns and
implying Ifechukwu’s involvement with another crime; (2) failing to object to
testimony regarding how the photo spread was developed, which implied Ifechukwu
had a criminal history; (3) failing to object to extraneous-offense testimony
during the punishment hearing, despite the State’s failure to give proper
notice of its intent to use that evidence against Ifechukwu during punishment;
(4) failing to call Lieutenant Ross or Sergeant Garza as witnesses during the
suppression hearing; (5) failing to investigate Ifechukwu’s alibi; and (6)
failing to secure a trial-court ruling on the motion to suppress illegally
obtained evidence based on an invalid arrest.  Ifechukwu also re-urges the
grounds for ineffective assistance he outlined in a motion for new trial, which
include allegations that counsel was ineffective by (1) making agreements
regarding Ifechukwu’s case with the prosecutor without his knowledge, (2)
failing to fully explain the prosecution’s evidence to him, (3) failing to
assign an investigator to his case until a few months before the trial, and (4)
failing to visit him in the county jail.  Ifechukwu argues that the cumulative
impact of these errors denied him a fair trial.  

            We
review claims of ineffective assistance of counsel using a two-pronged test.  See
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland
v. Washington, 466 U.S. 668, 687 (1984)).  The appellant bears the burden
of proving by a preponderance of the evidence that (1) his trial counsel’s
representation fell below an objective standard of reasonableness, and (2)
there is a reasonable probability that, but for counsel’s deficiency, the result
of the trial would have been different.  Strickland, 466 U.S. at 688,
693–94; Mallett v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2002).  A
reasonable probability is one sufficient to undermine confidence in the outcome,
meaning “‘counsel’s errors were so serious as to deprive the defendant of a
fair trial, a trial whose result is reliable.’”  Smith v. State, 286
S.W.3d 333, 340 (Tex. Crim. App. 2009) (quoting Strickland, 466 U.S. at
687); see also Mallett, 65 S.W.3d at 63.  A court’s analysis
considers the totality of the representation and the particular circumstances
of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  And “we begin with the strong presumption that counsel’s actions and
decisions were reasonably professional and motivated by sound trial strategy.” 
Cadoree v. State, 331 S.W.3d 514, 527 (Tex. App.—Houston [14th Dist.]
2011, pet. ref’d); see also Salinas, 163 S.W.3d at 740.  To
overcome the presumption of reasonable professional assistance, any allegation
of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Thompson, 9
S.W.3d at 813.  

The record for review of
effective assistance of counsel is best developed in a hearing on an
application for a writ of habeas corpus or a motion for new trial.  Stults
v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d).   Direct appeal is usually an inadequate vehicle for raising such a
claim because the record is generally undeveloped.  Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  When the record is silent as to
trial counsel’s strategy, we will not conclude defense counsel’s assistance was
ineffective unless the challenged conduct was “‘so outrageous that no competent
attorney would have engaged in it.’”  Id. (quoting Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); see also Cadoree, 331 S.W.3d
at 527–28.  In making such an evaluation, however, any judicial review must be
highly deferential to trial counsel and avoid the distorting effects of
hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)
(citing Strickland, 466 U.S. at 689).

A

Following the jury
trial, Ifechukwu requested new counsel and filed a motion for a new trial,
arguing he received ineffective assistance of counsel.  His trial counsel
submitted an affidavit responding to his complaints.  In his motion, Ifechukwu
alleges his counsel and the prosecutor made agreements without Ifechukwu’s knowledge,
but counsel expressly denies that allegation.  Ifechukwu complains counsel
failed to explain the evidence against him and he was thus unable to
meaningfully investigate that evidence.  However, counsel asserts this
complaint lacks merit because Ifechukwu confessed to each aggravated robbery
brought before the trial court and thus gave the Houston Police Department the
evidence used against him.  She also insists she kept Ifechukwu fully informed
and explained things to him “numerous numerous times” throughout his case.  Ifechukwu
further argues he was harmed by counsel’s failure to assign an investigator to
the case until a few months before the trial.  But counsel asserts her
investigator “spent a huge amount of time” with Ifechukwu and maintains she and
her investigator “looked into everything [they] could until it became not of
value.”  Ifechukwu argues he was harmed by counsel’s failure to visit him in
the county jail, but counsel explains she did not visit him because she had
several court settings where she and Ifechukwu had lengthy, face-to-face
private visits during which she repeatedly and thoroughly discussed all aspects
of the case with him.  Counsel further explains she sent her investigator to
speak with Ifechukwu in jail to confirm there was nothing new to discuss.  Counsel’s
affidavit additionally highlights her trial strategies, namely to mitigate Ifechukwu’s
punishment by emphasizing that no one was hurt during any of the crimes.

            The
trial court denied Ifechukwu’s motion for a new trial, concluding counsel did
“very well.”  The record supports the finding that counsel acted reasonably as
to these points and, to the extent Ifechukwu raises them again on appeal, we
conclude the record fails to establish counsel’s representation fell below an
objective standard of reasonableness, or that there is a reasonable probability
that, but for counsel’s deficiency, the result of the trial would have been
different.  See Strickland, 466 U.S. at 688, 693–94; Mallett v. State,
65 S.W.3d at 62–63.

B

1

            Ifechukwu
raises a number of additional ineffective-assistance complaints.  He argues
counsel was ineffective by failing to object to inadmissible extraneous
evidence referring to his potential involvement in a past crime and his
association with people who carried .22-caliber weapons; failing to object to
testimony regarding how Detective Rincon made the photo array, which implied
Ifechukwu had a prior criminal background; failing to call Lieutenant Ross or
Sergeant Garza to the stand during the suppression hearing; and failing to
secure a trial-court ruling on the motion to suppress illegally obtained
evidence acquired with an invalid search warrant.  However, the record is
silent regarding these alleged errors and, if indeed they are errors at all,
they are not so egregious such that no reasonable trial strategy could explain
them.  See Thompson, 9 S.W.3d at 814 (citing Strickland, 466 U.S.
at 689).  Because the record is silent as to counsel’s strategy, Ifechukwu
fails to rebut the presumption that counsel’s actions and decisions were
reasonably professional and motivated by sound trial strategy.  See Cadoree,
331 S.W.3d at 527.  Accordingly, we do not reach the second prong of the Strickland
test. 

2

Ifechukwu also argues
counsel was ineffective by failing to object to extraneous-offense testimony
during the punishment hearing when the State failed to provide proper notice of
its intent to use that offense against Ifechukwu.  However, counsel’s affidavit
confirms she received prior notice of all twelve extraneous offenses the State
raised during the punishment hearing.  Ifechukwu also alleges counsel should
have objected to the testimony because there was insufficient evidence linking
Ifechukwu to the extraneous offense to allow the testimony to come before the
jury.  However, counsel’s affidavit highlights the fact that Ifechukwu
confessed to the extraneous offense in question on the video, which was
properly admitted into evidence and played for the jury.  Accordingly, there
was sufficient evidence to support submission of this offense and counsel did
not render ineffective assistance by not objecting to admissible testimony.  See
Ex parte Martinez, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011), cert.
denied, Martinez v. Tex., ___ S. Ct. ___, 2011 WL 1596224 (2011).

3

Finally, Ifechukwu
argues counsel was ineffective by failing to investigate his alibi and call
meaningful alibi witnesses on his behalf.  Counsel’s affidavit addresses this
complaint.  She states Ifechukwu repeatedly requested she contact people on his
behalf only to then call them liars and allege they were stealing money from
him.  She explains Ifechukwu’s alibi, after a number of changes, was ultimately
that he had been driving alone for an hour or two when the robbery occurred,
leading counsel to conclude any witnesses who “possibly saw him hours earlier
would be of no help and could even damage us before the jury.”  Counsel’s
actions and decisions were reasonably professional and motivated by sound trial
strategy.  See Cadoree, 331 S.W.3d at 527. 

Because Ifechukwu fails
to rebut the presumption that counsel acted reasonably in some of his
complaints, and because in the remainder of his complaints the record
demonstrates counsel’s actions were reasonably professional and motivated by
sound trial strategy, we conclude Ifechukwu’s counsel was not ineffective. We
overrule issues four and five.

* * *

            For
the foregoing reasons, we affirm the trial court’s decision.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison

Do Not Publish — Tex. R. App. P. 47.2(b).









[1] When asked to explain the
contents of the dummy bag, Maurice testified, “just two twenties and a bunch of
ones and I think a check maybe.”





[2] Sergeant Garza’s first
name is not in the record. 





[3] The trial-court judge
denied Ifechukwu’s motion to suppress explaining, “I imagine most officers when
they are arresting somebody say you got to cooperate when they are arresting
somebody.  They are not talking about something that may happen three hours
later or twelve hours later are they going to make a statement.”





[4] Mixed questions turn on
an evaluation of credibility and demeanor “when the testimony of one or more witnesses,
if believed, is always enough to add up to what is needed to decide the
substantive issue.”  Loserth, 963 S.W.2d at 773 (citing Miller v.
Fenton, 474 U.S. 104, 114–15 (1985)); see also Guzman, 955 S.W.2d at
87.





[5] Specifically, Ifechukwu’s
complaint refers to the testimony of Kurt Brecht, who was the victim of one of
the aggravated robberies Ifechukwu confessed to during Officer Schlosser’s
interview.