

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00224-CR

BRANDON W. STAFFORD,

Appellant

v.

THE STATE OF TEXAS,

Appellee

**From the 249th District Court
Johnson County, Texas
Trial Court No. F45288**

## MEMORANDUM OPINION

Appellant, Brandon Wesley Stafford, was convicted of unlawful possession of a controlled substance in an amount more than one gram but less than four grams with intent to deliver, a second-degree felony, and unlawful possession of less than one gram of a controlled substance, a state-jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.113(c), 481.116(b) (West 2010 & Supp. 2011). In three issues, Stafford argues that the trial court erred in denying his motions to suppress and his request for an article 38.23 jury instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). We affirm.

# I.  BACKGROUND

At about 11:10 a.m. on September 5, 2010, Texas Department of Public Safety Troopers Samuel Travis Dendy and Karlton L. Cason observed a red Kia traveling southbound on Highway 67 in Johnson County.  According to Trooper Dendy, the Kia was traveling approximately ten miles over the posted speed limit, which constituted a violation of the Texas Transportation Code.  *See* TEX. TRANSP. CODE ANN. § 545.351 (West 2011).  The troopers activated the overhead lights on their patrol car and pursued the Kia.  Once they caught up with the Kia near the intersection of Highway 67 and South Parkway, the troopers noticed that the "back left stop lamp was defective" and that the vehicle's inspection sticker had expired—both of which were violations of the Texas Transportation Code.  *See id.* §§ 547.323, 548.051, 548.101 (West 2011).

After the Kia parked on the shoulder of the road, Trooper Cason approached the vehicle and attempted to make contact with the driver.  Trooper Dendy approached the front passenger window.  Trooper Cason began speaking with the driver of the vehicle, Stafford.  When Trooper Cason asked Stafford where he lived, Stafford first stated that he lived in Fort Worth, Texas.  Stafford then corrected himself and said that he lived in Cleburne, Texas.  Trooper Dendy observed the interaction between Stafford and Trooper Cason.  Trooper Dendy testified that Stafford appeared to be unusually nervous, which prompted the troopers to ask Stafford to exit the vehicle.  Once Stafford exited the vehicle, the troopers then sought to identify the other passengers.  Leijah Miller sat in the front passenger's seat, and Mikala Adair was asleep in the back seat of the vehicle.  The troopers learned that the occupants of the vehicle were headed to

Cleburne to rest after partying all night in Dallas, even though their route seemed to take them away from Cleburne.

Once they established the identities of the vehicle's occupants, the troopers returned to their patrol car to run the drivers' licenses of the occupants. Although there were not any active warrants out for any of the passengers, Adair and Miller both had prior drug-related criminal histories. Suspecting that illegal drugs might be in the vehicle, Trooper Cason returned to ask Stafford if he was transporting anything illegal and for consent to a search of the vehicle. According to the troopers, Stafford, while avoiding eye contact and "fidgeting around with his hands," responded that nothing illegal was inside the vehicle and denied consent to search because Adair was the owner of the vehicle.

Thereafter, the troopers spent several minutes trying to wake Adair. Trooper Dendy stated that Adair initially appeared to be "catatonic," but that she eventually awoke. Trooper Dendy noticed that Adair smelled of alcohol and that she stumbled when getting out of the vehicle. He recalled that Adair appeared to be incoherent when she first woke up. However, she eventually became coherent and alert. Once it appeared that Adair had her wits about her and was thinking clearly, the troopers asked for consent to search the vehicle.[1] According to Trooper Dendy, Adair freely and voluntarily consented to the search without any police pressure or coercion.

---

[1] Trooper Cason testified at trial that, once Adair woke up, her demeanor "changed dramatically . . . . [H]er total mood changed. She became like as if I am right now, just really aware of things."

After she gave the troopers consent to search the vehicle, Adair sat down on some large rocks near the road. In searching the vehicle, the troopers found a "one-hitter" pipe close to the ashtray in the center console area.[2] Trooper Dendy noted that the "one-hitter" pipe was a metal pipe used to smoke marihuana. He further noted that the pipe smelled of marihuana and that there was marihuana residue inside the pipe. After finding the "one-hitter" pipe, the troopers believed that they had probable cause to continue searching the entire vehicle and its contents. As the troopers searched the vehicle, Stafford "was kind of pacing, just real nervous. The closer I [Trooper Dendy] got to the box[,] I think the more [sic] the signs of nervousness increased when [sic] once I got towards the back of the vehicle."

In the back seat, the troopers found a black bag. Inside one of the pockets of the black bag were rolling papers, which are commonly used to roll loose-leaf tobacco or marihuana. Inside the main compartment of the bag, Trooper Dendy found a small box, which was locked. At this point, Trooper Dendy asked the passengers who owned the bag. Stafford responded that the bag was his but that the box was not. Miller and Adair both denied ownership of the box.

Trooper Dendy shook the box and remembered that the box smelled of marihuana. He also asked the passengers for a key to the box; however, no one responded to Trooper Dendy's request for the key. Nevertheless, Trooper Dendy broke

---

[2] At trial, Trooper Dendy stated that the "one-hitter" pipe was sent to the Garland Crime Lab for destruction because "[i]t wasn't an element of the offense. We don't keep anything drug related whether it be contraband and/or controlled substances in our office. . . . [W]e send it to the Garland lab for analysis and destruction so there's a disposition and a chain of custody of that evidence."

open the box and found $432 in different denominations; a clear plastic bag containing five orange ecstasy tablets imprinted with a Superman emblem; three purple ecstasy tablets imprinted with a rhinoceros emblem; a brownish-orange substance identified as a Penalty Group 2 controlled substance named "dimethyltrptamine"; and handwritten ledgers that "said Johnny owes me X amount, Suzie owes me X amount, gave so many tabs to so and so."[3]

The troopers subsequently arrested Stafford and released the vehicle to Adair and Miller. Stafford was transported to the Johnson County Law Enforcement Center for booking. After escorting Stafford inside, the troopers returned to the patrol car and found a gold key on an eight-ball key chain located in the front passenger floorboard where Stafford had been sitting. The troopers took the key inside and successfully inserted the key inside the keyhole of the locked box.

Stafford was charged by indictment with one count of unlawful possession of a controlled substance in an amount more than one gram but less than four grams with intent to deliver ("Count 1") and one count of unlawful possession of less than one gram of a controlled substance with intent to deliver ("Count 2"). Prior to trial, Stafford filed a "Motion to Suppress Evidence of the Arrest Based on Lack of Probable Cause Based on Videotape as Presented In *Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971)" and a "Motion to Suppress Illegally[-]Seized Evidence." After a

---

[3] Law enforcement also seized Stafford's cell phone, which, according to Trooper Dendy, contained text messages "of a business nature in reference to, hey, can I get some, how many do you have, I've got X of amount of tabs, amounts being negotiated, just different things, drug transaction related on the cell phone."

hearing, the trial court denied both motions and entered findings of fact and conclusions of law.

Thereafter, a jury trial on this matter commenced. After hearing the evidence, the jury found Stafford guilty in Count 1 and guilty in Count 2 of the lesser-included offense of unlawful possession of less than one gram of a Penalty Group 2 controlled substance. Stafford was sentenced to six years' incarceration in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ") with a $500 fine in Count 1 and one years' incarceration in the State-Jail Division of the TDCJ with a $10,000 fine in Count 2. The punishment in Count 2 was probated for five years, and the punishments for both counts were ordered to run concurrently. Stafford later filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II.   STAFFORD'S MOTIONS TO SUPPRESS

In his first two issues on appeal, Stafford challenges the trial court's denial of his motions to suppress. Specifically, in his first issue, Stafford asserts that the evidence did not establish that the troopers had probable cause or reasonable suspicion to search the vehicle. In his second issue, Stafford argues that Adair did not voluntarily consent to the search of the vehicle.

### A.   Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We

give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When a trial judge makes explicit fact findings regarding a motion to suppress, an "appellate court [must first] determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

In a hearing on a motion to suppress evidence based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see State v. Dietiker*, 345 S.W.3d 422, 424 (Tex. App.—Waco 2011, no pet.). The defendant's burden may be satisfied by establishing that a search or

seizure occurred without a warrant. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. After this showing is made by the defendant, the State assumes the burden of demonstrating that the search or seizure was conducted pursuant to a warrant or was reasonable. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. In this proceeding, the State stipulated that the stop was made without a warrant and, thus, assumed the burden of proof regarding whether reasonable suspicion for the detention existed. *See Ford*, 158 S.W.3d at 492.

## B.  Applicable Law

On appeal, Stafford appears to challenge not only the search of the vehicle but also the propriety of the initial stop. The Fourth Amendment to the United States Constitution provides, in part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception is the *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968). Consistent with *Terry*, a police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." 392 U.S. at 29, 88 S. Ct. at 1884; *see Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

A determination of reasonable suspicion is made by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). In *Foster v. State*, the court of criminal appeals repeated the standard for warrantless traffic stops:

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.

326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (internal quotations omitted); *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (noting that reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged in or is, or soon will be, engaging in illegal conduct).

## C. Was the stop justified?

Here, Trooper Dendy testified that he observed Stafford driving in excess of the posted speed limit and that the "back left stop lamp" was inoperable—both of which constitute violations of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 545.351, 547.323. Because of these violations, we conclude that the troopers had more than an inchoate and unparticularized suspicion or hunch to effectuate a temporary detention. *See Foster*, 326 S.W.3d at 613; *Garcia*, 43 S.W.3d at 530.

**D.      Was the prolonged detention reasonable?**

Next, Stafford complains that the troopers were not authorized to search the vehicle for contraband because the search did not "relate to the circumstances that justified the interference (speeding and defective tail light).  Therefore, the officers had **no** basis for the seizure or detention" (emphasis in original).

An investigative detention may last no longer than is necessary to effectuate the purpose of the stop.  *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983); *Davis*, 947 S.W.2d at 243.  Once the purpose has been satisfied, the stop may not be used for an unrelated "'fishing expedition.'"  *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422, 136 L. Ed. 2d 347 (1996) (Ginsburg, J., concurring)).  The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.  *James v. State*, 102 S.W.3d 162, 170 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Davis*, 947 S.W.2d at 245; *Perez v. State*, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no pet.)).

"On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information."  *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  Police officers may also ask "the driver of the stopped car to step out of the vehicle and onto the side of the road" and ask about the driver's destination and purpose for the trip.  *Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333-34, 54 L. Ed. 2d 331 (1977));

*Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd); *Nuttall v. State*, 87 S.W.3d 219, 222 (Tex. App.—Amarillo 2002, no pet.). And, once the purpose of the stop has been effectuated and the police officer's suspicions allayed, the police officer may still ask the driver of the stopped vehicle if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle. *Strauss*, 121 S.W.3d at 491 (citing *Spight v. State*, 76 S.W.3d 761, 767-68 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

In the instant case, Trooper Cason asked Stafford where he lived, and Stafford first responded "Fort Worth" but later changed his answer to "Cleburne." As noted in the trial court's findings of fact, "Trooper Dendy observed the defendant act nervously." In fact, Trooper Dendy testified that throughout their interaction, Stafford refused to make eye contact with the officers; that he was fidgety; and that he paced back and forth once he was asked to exit the vehicle. In addition, the troopers learned that the three passengers had been partying all night and were returning to Cleburne to rest. Furthermore, when checking for warrants, the troopers discovered that the two other passengers, Adair and Miller, both had prior drug-related arrests. These circumstances constituted articulable facts from which a reasonable officer could reasonably infer that Stafford or one of the other passengers may have been transporting contraband; thus, we conclude that these facts justified further investigation.[4] *See Foster*, 326 S.W.3d at 613; *see also Garcia*, 43 S.W.3d at 530.

---

[4] At the hearing on Stafford's motion to suppress, Trooper Dendy provided the following testimony with regard to "indicators" that he observed to give him reasonable suspicion to further detain Stafford:

**E.     Was consent to search the vehicle given voluntarily?**

In furtherance of their investigation, the troopers asked Stafford whether he was transporting contraband and then asked for consent to search the vehicle. *See Strauss*, 121 S.W.3d at 491; *Spight*, 76 S.W.3d at 767-68. Stafford denied that he was transporting contraband, and as noted in the trial court's findings of fact, Stafford informed the troopers that the vehicle belonged to Adair. The troopers then tried to wake Adair, who was asleep in the back seat of the vehicle. Though Trooper Dendy testified that Adair appeared to be "catatonic," the troopers were able to wake Adair and requested that she exit the vehicle. However, when exiting the vehicle, Adair stumbled, which Stafford argues is a clear indicator that Adair was intoxicated and not able to voluntarily answer the troopers' questions. After giving Adair time to compose herself, the troopers asked whether she owned the vehicle, to which she responded in the affirmative. The troopers next asked for permission to search the vehicle. Adair consented to the search, and as a result of the search, the troopers found drugs and drug paraphernalia in the vehicle and inside a bag that Stafford owned.

---

The indicators were upon the initial approach, the way he was acting when he spoke with Trooper Cason; a lot of inconsistency about where he lived and what was going on with that situation; mostly, you know, just the fidgeting. He wouldn't look him in the eyes when he spoke to him. That was the initial stuff. Once we got him out of the vehicle, just real nervousness, pacing back and forth, moving around. Also, when we ran criminal histories of everyone inside the vehicle, two of them within a year had been arrested for narcotics charges, which heightened me to believe that there was [sic] narcotics in there. Also, the—Mikala's situation was a huge factor for wanting to check on her safety and to hold the vehicle up longer to assess that situation. Then when speaking about consent, once it was denied, that extended things a lot farther and further led us to believe that there was something in there.

It is not unreasonable per se to request consent to search after completion of a traffic stop. *Leach v. State*, 35 S.W.3d 232, 235 (Tex. App.—Austin 2000, no pet.) (holding that reasonable suspicion to continue detention and search is not required under *Robinette* for valid consent to search following the resolution of the original reason for the stop); *Simpson*, 29 S.W.3d at 327; *see also Spight*, 76 S.W.3d at 768 (holding that the denial of a motion to suppress based on "prolonged detention" was not an abuse of discretion where appellant gave consent to search with no indication from the patrolman that compliance was required).

A police officer may approach a citizen without probable cause or even reasonable suspicion to ask questions or obtain consent to search. *Leach*, 35 S.W.3d at 235 (citing *Royer*, 460 U.S. at 497-98, 103 S. Ct. at 1324); see *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (stating that another exception to the warrant requirement arises when a person voluntarily consents to a search). Likewise, reasonable suspicion is not required for a police officer to request consent to search an automobile after the reason for an initial stop is concluded as long as the message is not conveyed that compliance is required. *Leach*, 35 S.W.3d at 235; *Simpson*, 29 S.W.3d at 327; *see also Spight*, 76 S.W.3d at 767 (noting that the constitutional proscriptions against warrantless searches and seizures do not come into play when a person gives voluntary consent).

The validity of consent to search is a question of fact to be determined from all the circumstances. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d 854

(1973) (holding that the test for valid consent to search requires the consent to be voluntary, and voluntariness is a question of fact to be determined from all the circumstances). To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Carmouche*, 10 S.W.3d at 331. The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence, but the Texas Constitution requires the State to make the same showing by clear and convincing evidence. *Guevara v. State*, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003). Accordingly, we review the evidence under the more protective Texas standard. *See State v. Ibarra*, 953 S.W.2d 242, 244-45 (Tex. Crim. App. 1997).

Voluntariness of consent is determined by looking at the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000) (citing *Schneckloth*, 412 U.S. at 226, 93 S. Ct. at 2041). By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. *Id.* In determining voluntariness, the factors considered by the court include: (1) whether the consenting person was in custody; (2) whether the person was arrested at gunpoint; (3) whether the person had the option of refusing consent; (4) the constitutional advice given to the person; (5) the length of the detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *Id.* Courts may also consider the consenting person's age, education, and intelligence. *Id.*

Trooper Dendy testified at the hearing on Stafford's motions to suppress that Adair was alert, coherent, and appeared to be thinking and speaking clearly when she gave consent to search the vehicle. Moreover, the trial court, in its findings of fact, specifically mentioned that "[w]hen Ms. Adair consented to the search of her vehicle[,] Trooper Dendy observed that she was alert, coherent, and appeared to be thinking and speaking clearly." Nonetheless, in his second issue, Stafford argues that the record does not demonstrate that Adair was alert, coherent, and thinking and speaking clearly as to voluntarily give consent to search the vehicle.

Nothing in the record indicates that Adair was in custody at the time she consented to the search, that she was arrested at gunpoint, that she was subjected to physical punishment, or that she was repeatedly asked for consent to search the vehicle. *See Reasor*, 12 S.W.3d at 818. Moreover, Stafford does not direct us to any evidence indicating that Adair's consent was the product of duress or coercion. *See Carmouche*, 10 S.W.3d at 331. Further, the record evidence demonstrates that Adair had the option of refusing to consent to the search. And perhaps more importantly, the trial court included in its findings of fact that Adair was alert, coherent, and thinking and speaking clearly—a finding which hinged upon the trial court's determination of the credibility and demeanor of Trooper Dendy. Because this finding hinged upon Trooper Dendy's credibility and demeanor and because the record evidence does not demonstrate that Adair's consent was given involuntarily, we give "almost total deference" to the trial court's finding. *See Guzman*, 955 S.W.2d at 89.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Stafford's motions to suppress. *See Crain*, 315 S.W.3d at 48; *Guzman*, 955 S.W.2d at 88-89. Accordingly, we overrule Stafford's first two issues on appeal.

### III. ARTICLE 38.23 AND JURY INSTRUCTIONS

In his third issue, Stafford contends that the trial court erred in failing to give an article 38.23 jury instruction because there was a dispute with regard to whether the troopers: (1) had probable cause to search the vehicle; and (2) obtained voluntary consent from Adair.

### A. Applicable Law

Article 38.23 of the Texas Code of Criminal Procedure provides the following:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

An article 38.23 instruction is required when there are factual disputes as to how the evidence was obtained. *See Bell v. State*, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996); *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986); *Hall v. State*, 649 S.W.2d 627, 628 (Tex. Crim. App. 1983). In fact, the Texas Court of Criminal Appeals has held that

there are three requirements that must be met before a trial court is required to include an article 38.23 instruction in the jury charge: (1) the evidence heard by the jury must raise an issue of fact regarding whether evidence was illegally obtained; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To raise a disputed fact warranting an article 38.23 instruction, there must be some affirmative evidence that contravenes the existence of that fact. *Madden*, 242 S.W.3d at 513. "A cross-examiner's questions do not create a conflict in the evidence, although the witness's answers to those questions might. . . . Furthermore, the jury's right to disbelieve a witness's testimony in whole or part does not create a factual dispute." *Cadoree v. State*, 331 S.W.3d 514, 521 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Madden*, 242 S.W.3d at 513; *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).

When there is no conflicting testimony regarding the relevant facts, no jury instruction is required. *See Lackey v. State*, 638 S.W.2d 439, 455 (Tex. Crim. App. 1982); *see also Estrada*, 30 S.W.3d at 605. And,

> If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Madden*, 242 S.W.3d at 510-11 (internal citations omitted).

Stafford v. State                                                                                          Page 17

**B.  Discussion**

Prior to the reading of the indictment and the commencement of the State's case-in-chief, Stafford's counsel requested that an article 38.23 instruction be included in the jury charge concerning whether the troopers had probable cause to search the vehicle in light of the destruction of the "one-hitter" marihuana pipe that was allegedly found in the ashtray in the center console of the vehicle.  The trial court responded that this was a matter that needed to be addressed once the evidence had been developed.  Stafford's counsel asked whether she could discuss in her opening statement the issue of probable cause, as well as the voluntariness of Adair's consent to search.  The trial court responded that the attorneys, in their opening statements, could discuss what they believed the evidence would show.  At the close of the evidence in the guilt-innocence phase, the trial court revisited Stafford's request for an article 38.23 jury instruction. After a lengthy discussion, the trial court denied Stafford's request.

At trial, Trooper Dendy testified that, after Adair gave consent to search the vehicle, he found the "one-hitter" marihuana pipe in the vehicle's ashtray located in the center console.  Trooper Cason corroborated Trooper Dendy's testimony and added that the pipe had marihuana residue in it and that it smelled of marihuana.  Because the pipe constituted drug paraphernalia and because they smelled the odor of marihuana in the pipe, the troopers established probable cause to conduct a warrantless search of the vehicle and all containers inside the vehicle for contraband.  *See Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) (noting that a police officer may lawfully search an

automobile if he has probable cause to believe that the vehicle contains evidence of a crime); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (stating that probable cause to search "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found"); *see also United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173, 72 L. Ed. 2d 572 (1982) (holding that, if the automobile exception applies, police may search "every part of the vehicle and its contents that may conceal the object of the search"). With regard to the destruction of the pipe, Trooper Dendy testified that it was sent to the Garland Crime Lab to be destroyed because it "wasn't an element of the offense." Trooper Dendy explained that this is regularly done and that none of the passengers were charged with an offense pertaining to the pipe.

Stafford did not offer any evidence to refute the consistent testimony provided by Troopers Dendy and Cason with regard to the pipe and the development of probable cause to search the vehicle. *Madden*, 242 S.W.3d at 513. In fact, other than cross-examining witnesses, Stafford did not present any evidence at trial. Accordingly, we cannot say that there is a disputed fact issue concerning the discovery of the pipe that warranted an article 38.23 instruction. *See id.*; *Lackey*, 638 S.W.2d at 455; *see also Cadoree*, 331 S.W.3d at 521; *Estrada*, 30 S.W.3d at 605.

With regard to the voluntariness of Adair's consent, Troopers Dendy and Cason both testified that Adair was given time to regain her composure inside the vehicle once she finally woke up. Trooper Cason added that after Adair was removed from the vehicle, she was given two or three minutes before she was asked for consent to search.

Troopers Dendy and Cason recalled that Adair was alert and coherent when she gave consent. Trooper Cason stated that Adair's eyes were not red and blood-shot, and she did not slur her speech.

On appeal, Stafford merely asserts that:

> The officer's own statements [sic] that one minute the owner of the vehicle was intoxicated, catatonic, and nonresponsive. Then, he later states that she was alert, awake, and coherent to give a [sic] consent to search the vehicle. By virtue of the answers given by the police officer, a conflict is created and a fact affirmatively contested.

However, as stated earlier, Stafford did not offer any evidence to refute the consistent testimony of Troopers Dendy and Cason. *See Madden*, 242 S.W.3d at 513. Stafford's argument in this issue relies upon the questioning of the cross-examiner and attempts to intrude upon the jury's right to believe or disbelieve witnesses' testimony in whole or in part to create a factual dispute. As stated in *Cadoree*, neither approach creates a conflict in the evidence. *See* 331 S.W.3d at 521.

After reviewing the evidence, we cannot say that there is a disputed fact issue concerning Adair's consent that warranted an article 38.23 instruction. *See Madden*, 242 S.W.3d at 513; *Lackey*, 638 S.W.2d at 455; *see also Cadoree*, 331 S.W.3d at 521; *Estrada*, 30 S.W.3d at 605. We therefore overrule Stafford's third issue.[5]

## IV. CONCLUSION

---

[5] We also find it noteworthy that the trial court, in its findings of fact and conclusions of law with respect to Stafford's motions to suppress, determined that "[i]t has been shown by clear and convincing evidence that Mikala Adair freely and voluntarily consented to the search of the vehicle" and that "Trooper Dendy had probable cause to search every part of the vehicle and its contents that may have concealed the object of the search."

Having overruled all of Stafford's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed June 27, 2012
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment.  A separate opinion will not issue.)